IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| ANTONIO SERCYE, | ) |
| Plaintiff, | ) |
| v. | ) No. 12-CV-3220 |
| JENNIFER WEATHERFORD, DR. OBAISI, ALEX DAWSON, RUSSELL REYNOLDS, KESS ROBERSON, and LISA LERCHER, | ) |
| Defendants. | ) |

## OPINION

**BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:**

Plaintiff, currently incarcerated in Dixon Correctional Center and proceeding pro se, pursues an Eighth Amendment claim arising from alleged deliberate indifference to Plaintiff's diabetes during Plaintiff's incarceration in Logan Correctional Center.

Defendants move for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. For the reasons explained below, the Court concludes that Plaintiff did exhaust his administrative remedies with regard to his claims arising in December

1

2011.  However, Plaintiff failed to exhaust on his claims arising before that date—the claims against Dr. Obaisi for failing to diagnose, monitor, and treat Plaintiff's diabetes before December 2011.  This case therefore proceeds only on Plaintiff's claim for deliberate indifference to his serious medical needs in December 2011.

## STANDARD

Prisoners must exhaust their available prison administrative remedies before bringing an action in federal court.  42 U.S.C. § 1997e(a).  If the action is brought before the exhaustion process is complete, then the action must be dismissed without prejudice.  Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004)(a prisoner's lawsuit filed before the administrative process is complete must be dismissed, even if the administrative process concludes while the lawsuit is pending).

Defendants bear the burden of proving Plaintiff failed to exhaust.  Turley v. Rednour, --- F.3d ---, 2013 WL 3336713 *2 7th Cir. 2013).  The Court decides disputed issues of material fact regarding exhaustion, not the jury.  Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).  An evidentiary hearing is scheduled to resolve disputed material facts regarding exhaustion if necessary.  Id.

## FACTS

According to Plaintiff, Plaintiff was diagnosed with borderline diabetes about four months before he was transferred from Centralia Correctional Center to Logan Correctional Center on September 14, 2011. (Pl.'s Aff. ¶ 1, d/e 59.) The diagnosis was documented in Plaintiff's medical file, and the medical staff at Centralia instructed Plaintiff to immediately contact health care staff if Plaintiff experienced classic diabetes symptoms such as dizziness, dry mouth, or frequent urination. (Pl.'s Aff. ¶ 2.)

Plaintiff visited the health care staff at Logan Correctional Center several times between September 14 and December 13, 2011, for checks of his blood pressure and cholesterol. Plaintiff assumed, mistakenly, that his blood sugar was also being monitored. (Pl.'s Aff. ¶¶ 3.)

On or about December 1, 2011, Plaintiff "began feeling very ill, with dizziness, blurred vision, dried mouth, and frequent urination." (Pl.'s Aff. ¶ 7). Plaintiff avers that he wrote several health care requests to Defendant Lercher, the health care unit administrator, though Plaintiff does not state the date of these letters. (Pl.'s Aff. ¶ 8.) Plaintiff also asserts that he filed an emergency grievance, but he does not attach a copy nor state the date

he filed this first grievance.  Id.  Two later grievances are in the record, one dated December 12, 2011, and another dated December 30, 2011.

On December 11, 2011,[1] Plaintiff was called to the health care unit for his tuberculosis test.  Plaintiff explained his worsening symptoms to Defendant Nurse Weatherford, but Weatherford purportedly brushed off Plaintiff, telling Plaintiff to sign up for sick call.  (Pl.'s Aff. ¶¶ 10-12.)  Fearing that he could not wait the several days until sick call, Plaintiff persuaded a guard to intervene on Plaintiff's behalf.  Plaintiff was then called to the health care unit that day.  Plaintiff's blood sugar tested at over 500.  Insulin was immediately administered to Plaintiff in the infirmary, where Plaintiff remained for observation.  (Pl.'s Aff. ¶¶ 13-19.)

On December 12, 2011, Plaintiff filed his second emergency grievance.  The second emergency grievance states:

> I missed sick call because I wasn't feeling bad then.  I woke up Sat 12 /9/11 suffering from severe cramps, very thirsty, urinating constantly, mouth dry.  My wife even noticed on the visit that I had lost a lot of weight.  I've wrote [sic] the hospital trying to get seen because this is an emergency.  I haven't been able to use the toilet in about 2 weeks.  At first I thought it would past [sic].  It hasn't.  I went for a TB test on 12/11/11 and tried to explain to the nurse that I was having serious trouble with my health.  She blew me off by saying I don't care about anything but TB shots put in for sick call.  I don't know her name but I can identify her in court.  When has $2.00 copay

---

[1] Some documents state the date of the tuberculosis clinic was on December 13, 2011, but December 11 appears to be the correct date.

4

become more important that our health, and why can't my family reach anyone of the wardens. They called and have the phone bills to prove it. I need to see a doctor not a nurse A.S.A.P. Please help me Wardens of Logan. This is the second copy.

(Pl.'s 12/12/11 grievance, d/e 59, p. 28).

Plaintiff's December 12th grievance was marked received by the counselor and the Warden two days later, on December 14th. The Warden checked the box on the grievance form which states, "Yes; expedite emergency grievance." Meanwhile, Plaintiff had already been seen by the doctor on December 13th. The grievance was accordingly found to be moot. Plaintiff appealed this finding—the appeal was marked received as of January 17, 2012, by the Office of Inmate Issues.

Plaintiff filed a second grievance on December 30, 2011, this time providing more detail about Nurse Weatherford's alleged unprofessional behavior at the tuberculosis clinic. (Pl.'s 12/30/2011 grievance, d/e 59, p. 32.) The counselor responded that Plaintiff had already filed two prior grievances about this incident. This grievance indicates that the Office of Inmate Issues received it on January 17, 2012.

On June 13, 2012, the Administrative Review Board denied Plaintiff's "grievance received January 17, 2012."  (6/13/12 ARB letter, d/e 59.)  The record does not reveal whether the Board was addressing both grievances, since both dealt with similar issues, or just one of Plaintiff's grievances.

## ANALYSIS

All of the defendants, except for Nurse Weatherford, argue that Plaintiff failed to exhaust because Plaintiff failed to specifically name Defendants in his grievances or complain that Defendants denied Plaintiff medical care or access to medical care.

Administrative regulations governing prison grievance procedures do require a level of specificity, including the names of persons responsible, if known:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint.  This provision does not preclude an offender from filing a grievance when the names of individuals are not know, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(b).  Similarly, controlling case law requires an inmate's grievance to give fair notice of the problem, to

afford a meaningful opportunity for prison officials to address the problem before litigation ensues. See <u>Smith v. Zachary</u>, 255 F.3d 446, 450 (7th Cir. 2001)(The purpose of the exhaustion requirement is to provide the prison system with notice and an "opportunity to address the situation internally, . . . .").

    Here, Plaintiff's emergency grievance dated 12/12/11 gives notice that he (1) had an urgent medical need, (2) had tried contacting health care and the wardens to no avail, and (3) had asked a nurse at the tuberculosis clinic for help to no avail. This grievance was processed through the channels on its merits, not rejected because Plaintiff had failed to name specific persons at fault. "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." <u>Maddox v. Love</u>, 655 F.3d 709, 722 (7th Cir. 2011)(Where grievance form instructed the inmate to provide a "brief summary of grievance," inmate exhausted administrative remedies though he did not name all of the defendants). Further, the grievance directly and by inference implicates the health care staff, which would include Defendants Dr. Obaisi, Lercher, and Weatherford, as well as the Wardens, which would include Defendants

7

Reynolds, Roberson, and Dawson. The Court therefore concludes that Plaintiff did exhaust his administrative remedies as to Plaintiff's claim for deliberate indifference to his serious medical need for medical treatment in December 2011.

However, Plaintiff cannot rely on his December 2011 grievances to reach back to claims arising before then. Specifically, Plaintiff pursues a claim against Dr. Obaisi arising from Dr. Obaisi's alleged failure to diagnose, monitor, and treat Plaintiff's diabetes from the day Plaintiff arrived in Logan Correctional Center in September 2011. Plaintiff made no suggestion in the grievances in this record that anyone had refused to attend to Plaintiff's medical needs from September through November 2011.

Plaintiff argues that he could not have exhausted his administrative remedies on claims arising before December 2011 because Defendants intentionally avoided testing Plaintiff's blood sugar in order to fraudulently conceal Plaintiff's uncontrolled diabetes. Plaintiff contends that he did not know that he had developed uncontrolled diabetes until after the 60-day deadline for filing a grievance had passed.

The problem with Plaintiff's argument is that the 60-day deadline for filing a grievance does not start to run until the discovery of the problem.

20 Ill. Admin. Code 504.810(a).  Plaintiff had 60 days from the date Plaintiff discovered his uncontrolled diabetes to file a grievance about Dr. Obaisi's failure to diagnose, monitor, and treat Plaintiff's condition.  The grievance clock started to run on these issues in December, 2011, when Plaintiff first learned of his uncontrolled diabetes.  Plaintiff had until the following February to file a grievance regarding the alleged failure to prevent Plaintiff from becoming ill in December 2011.

Plaintiff also argues that he was not required to file a grievance about the lack of medical care, but the argument is without merit.  Plaintiff's own grievances demonstrate that the grievance process is available for issues regarding medical care.

IT IS THEREFORE ORDERED THAT:

1) The motion for summary judgment on exhaustion by Defendant Dr. Obaisi is granted in part and denied in part (d/e 38).  The motion is granted as to Plaintiff's claims arising from alleged deliberate indifference to Plaintiff's diabetes before December 2011.  The motion is otherwise denied.

2) The motion for summary judgment on exhaustion by Defendants Dawson, Lercher, Reynolds, and Roberson is denied (d/e 49).

3) This case proceeds on Plaintiff's claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs in December 2011.

4) The discovery stay is lifted.

5) Within 30 days of the entry of this order, Plaintiff shall provide the following to Defendants' counsel, not to the Court:

   a. The names of the persons with knowledge of the relevant incidents whom Plaintiff may use to support his claims, along with a short description of what each person knows;

   b. Copies of documents Plaintiff possesses which Plaintiff may use to support his claims;

   c. A statement of the injuries Plaintiff suffered and the relief Plaintiff seeks.

6) Within 45 of the entry of this order, Defendants shall provide to Plaintiff, to the extent not already possessed by Plaintiff or provided to Plaintiff:

   a. The names and working addresses of the persons with knowledge of the relevant incidents whom Defendants may use to support their defense, along with a short description of what each person knows;

    b. Plaintiff's medical records from January 1, 2011 to July 1, 2012;

    c. Plaintiff's relevant grievances and all responses to those grievances;

    d. Copies of any other documents, whether paper or electronically stored, which Defendants may use to support their claims or defenses.

7) The parties are under a continuing obligation to supplement or correct the disclosures ordered above, as well as any discovery responses. Fed. R. Civ. P. 26(c). This means the parties must update the information they have provided as additional information becomes available.

8) If Plaintiff plans to use expert testimony, Plaintiff's expert disclosures under Federal Rule Civil Procedure 26(a)(2) are due to Defendants within 60 days of this order.

9) If Defendants plan to use expert testimony, Defendants' expert disclosures under Federal Rule Civil Procedure 26(a)(2) are due to Plaintiff within 90 days of this order. The disclosures are not filed in Court.

10) Plaintiff's indigency and incarceration may effectively limit Plaintiff's discovery to written requests for information. Written discovery to Defendants includes requests for the production of documents (Fed. R. Civ. P. 34), interrogatories (Fed. R. Civ. P. 33), and requests for admission (Fed. R. Civ. P. 36). In general, the federal rules give 30 days for a party to respond to discovery requests. Discovery requests and responses are not filed with the Court, unless they are the subject of a motion to compel.

11) Fed. R. Civ. P. 33(a)(1) allows parties to serve no more than 25 written interrogatories, including subparts. Rule 26(b) provides that leave to increase this number may be granted upon a showing of good cause.

12) Oral depositions are limited to the deposition of Plaintiff, subject to a motion by Defendants to take additional depositions. If Defendants seek to take additional depositions, they must arrange for Plaintiff to participate in the deposition by phone or video, or to arrange for Plaintiff to participate through written questions under Federal Rule of Civil Procedure 30(c)(3).

13) If a Defendant objects to a discovery request for security reasons or for a reason listed under Fed. R. Civ. P. 26(b)(1)(C),

then the Defendant must file a motion for a protective order under Rule 26(b)(1)(C) and/or a motion for an in camera inspection. The motion is due within the deadline for responding to the discovery request.

14) The parties are responsible for obtaining and serving their own subpoenas to obtain information from nonparties. If Plaintiff seeks a subpoena, Plaintiff must file a motion requesting the issuance of a subpoena. The motion must set forth the addressee of the subpoena, the information Plaintiff seeks, and a short description of the relevance of the information. Plaintiff is responsible for serving the subpoena and complying with Federal Rule of Civil Procedure 45. CDIL-LR 45.1; see also <u>Ott v. City of Milwaukee</u>, 682 F.3d 552, 557 (7th Cir. 2012)(subpoena seeking documents may be served by certified mail).

15) Written discovery requests must be mailed to a party at least 30 days before the discovery deadline.

16) Discovery requests and responses are not filed with the court. CDIL-LR 26.3(A). Plaintiff must mail his discovery requests directly to Defendants' counsel and not file the requests with the Court or the Clerk. Discovery requests sent to the Clerk or Court

will be returned unfiled, unless those requests are attached to and the subject of a motion to compel.

17) A motion to compel cannot be filed until after a party has failed to adequately respond to a discovery request. Additionally, motions to compel must be filed within 14 days of receiving an unsatisfactory response to a timely discovery request. Motions to compel discovery must be accompanied by the relevant portions of the discovery request and the response. The party filing the motion must explain exactly what information he or she seeks and why the response was inadequate. A motion to compel which does not contain this information may be stricken.

18) Discovery closes January 31, 2014.

19) Plaintiff is advised that the costs of litigation, including discovery, are not paid by the Court, even though Plaintiff is proceeding in forma pauperis. The in forma pauperis statute only permits the Court to collect the filing fee in installments from prisoners filing civil actions. 28 U.S.C. § 1915(b). The statute does not allow the Court to waive or pay other expenses of litigation.

20) Plaintiff is not entitled to a free transcript of his deposition. However, Defendants must attach Plaintiff's entire deposition transcript to a summary judgment motion if Defendants rely on Plaintiff's deposition testimony in their motion.

21) Summary judgment motions are due February 28, 2014. A summary judgment motion by Defendants which relies on Plaintiff's deposition or medical records must attach the complete copy of the deposition and the complete medical records for the relevant time period.

22) A final pretrial conference and trial will be scheduled if necessary after the Court rules on motions for summary judgment.

23) If a party seeks action by the Court, a filing should be titled as a motion stating the specific action the party seeks. Every filing must have the case name and number on the first page. In general, only motions and responses to motions should be filed, unless otherwise directed by the Court. Replies to responses are not allowed unless filed with regard to a summary judgment motion. CDIL-LR 7.1(B)(3); 7.1(D)(3). Random exhibits and letters will not show as pending on the Court's docket and will not

be considered by the Court. Repetitive or duplicate motions will be stricken.

24) If Plaintiff is incarcerated in a prison equipped with electronic filing capability, Plaintiff must file documents with the Clerk electronically.

25) Plaintiff is advised not to send originals of any document to the Clerk or Court because after the Clerk scans a document into the electronic filing system, the document is destroyed.

26) Plaintiff is responsible for making and keeping his own copies of filings. If Plaintiff seeks a copy of a filing from the Clerk, Plaintiff must identify the filing and pay 10 cents per page for the copy, up front.

27) Plaintiff must keep the Clerk informed in writing of Plaintiff's current address and, if released from prison, Plaintiff's phone number. Failure to do so will result in dismissal of this case, with prejudice.

ENTER: August 7, 2013

      \_\_\_\_\_*s/ Byron G. Cudmore*_____
      BYRON G. CUDMORE
      UNITED STATES MAGISTRATE JUDGE