UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ANTONIO SERCYE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 12-3220 |
| WEXFORD HEALTH SOURCES, *et al.* | ) ) ) ) |
| Defendants. | ) |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, presently incarcerated at Dixon Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need for events that allegedly transpired during his incarceration at Logan Correctional Center. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Docs. 112, 114). The motions are granted in part, and denied in part.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was incarcerated at Logan Correctional Center ("Logan") from September 14, 2011, until February 8, 2012. Defendants were employed at the facility in the following capacities:

Defendant Weatherford was a nurse; Defendant Lercher Hopp was the Healthcare Unit Administrator.[1]

Plaintiff was diagnosed with diabetes mellitus type 1 on December 13, 2011, following an acute diabetic episode. Plaintiff had not been previously diagnosed with diabetes. According to Plaintiff, the symptoms he experienced (excessive thirst and urination, cramps, difficulty walking) began as early as December 1, 2011.

During the relevant time period, inmates at Logan could request medical treatment at any time through the nurse sick call procedure by filling out a request form. Nurse sick call was held for each housing unit on one scheduled day per week. At some point between December 1, 2011 and his eventual diagnosis, Plaintiff was scheduled for dental sick call, but he did not go.

Inmates could also attempt to get medical treatment by writing to Defendant Lercher Hopp directly. If, after receiving a letter from an inmate, Defendant Lercher Hopp believed that the conditions

---

[1] Plaintiff also named the following defendants: Defendant Obaisi was Plaintiff's treating physician; Defendant Dawson was the Warden; Defendants Reynolds and Roberson were Assistant Wardens. In his Combined Response to the Defendants' respective motions for summary judgment, Plaintiff states he no longer seeks relief against these defendants.

described warranted attention, she could (1) place the inmate on her call line, which is separate from nurse sick call; or (2) take the request to the nurse on duty and request that the inmate be summoned to the healthcare unit for examination.  Lercher Hopp Dep. 48:2-17.  Defendant Lercher Hopp testified that requests made via institutional mail usually arrive the next day.  Id. 40:12-41:3.  Plaintiff made at least two requests directly to Defendant Lercher Hopp.

On December 8, 2011, Plaintiff wrote a letter to Defendant Lercher Hopp.  (Doc. 118-3 at 1).  In the letter, Plaintiff stated that his mouth is constantly dry, that he drank 12 bottles of water during a 35-minute visit with his wife, that he urinated 20 times in a two-to-three hour period, and that he feels tired, is constantly sweating, and has experienced weight loss.  Defendant Lercher Hopp does not remember receiving this letter.  Lercher Hopp Dep. 46:11-13.

When he received no response to his first letter, Plaintiff wrote a second letter describing the same symptoms.  (Doc. 118-3 at 2).  Defendant Lercher Hopp identified handwritten notations, dated December 13, 2011, on the letter as her own.  Defendant Lercher

Hopp explained that the notations indicate that she would have given the letter to a nurse and requested that Plaintiff be called over to the healthcare unit.  Lercher Hopp Dep. 51:5-52:24.

At some point before he was diagnosed, Plaintiff encountered Defendant Weatherford in the healthcare unit for an annual tuberculosis ("TB") test.  Plaintiff testified that he attempted to convey the above-described symptoms to Defendant Weatherford along with a comment that he felt like he was dying.  Pl.'s Dep. 62:14-15 ("I said look, Nurse, I'm dying....").  According to Plaintiff, Defendant Weatherford responded to his request for help by stating, "I don't give a fuck, sign up for sick call.  I got to have them do this TB test, get out of my face."  Id. 50:5-6.

Defendant Weatherford testified in her deposition that she does not remember this encounter.  Weatherford Dep. 20:5-14.  She also testified that if she noticed an inmate experiencing problems during administration of TB tests, she would help them or direct them to the nurse sick call area located on the other end of the building.  Id. 21:6-10.

Medical staff examined Plaintiff on December 13, 2011, when he was diagnosed with diabetes mellitus type 1.  Plaintiff testified

he received this treatment when he flagged down a correctional sergeant in his housing unit and explained his symptoms. Pl.'s Dep. 52:8-53:3.

## ANALYSIS

Inmates are entitled to adequate medical care under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. Id. at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. McDonald v. Hardy, 821 F.3d 882, 888 (7th Cir. 2016) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014), and Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)). Rather, liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The parties agree that Plaintiff suffered from an objectively serious medical need.

As Plaintiff now seeks relief only against Defendant Lercher Hopp and Defendant Weatherford, the issue before the Court is whether a triable issue of material fact exists as it relates to the delay in receiving treatment. Where delay in receiving medical treatment is at issue, a plaintiff must offer "verifying medical evidence" that the delay, rather than the underlying condition, caused some degree of harm. Williams v. Liefer, 491 F.3d 710, 714-15 (7th Cir. 2007); Jackson v. Pollion, 733 F.3d 786, 790 (7th Cir. 2013) ("No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury."). "That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." Williams, 491 F.3d at 715.

Defendants argue that Plaintiff cannot provide such evidence because Defendant Obaisi testified that the delay Plaintiff experienced would not have caused any lasting harm. Obaisi Dep. 65:13-66:6. Nevertheless, Defendant Obaisi also testified that Plaintiff's symptoms constituted a "Code 3" emergency. Id. 61:6-9.

A Code 3 is the prison's way of providing immediate medical treatment in emergencies.  Lercher Hopp Dep. 21:18-21; 30:7-21. In this context, the Court cannot discount Plaintiff's attestations of pain that manifested to a point where Plaintiff thought he was dying.  If the delay in treating Plaintiff's symptoms resulted in needless suffering, Plaintiff's subjective complaints of pain, if believed by the trier of fact, are sufficient to impose constitutional liability despite the absence of objective indicia of harm.  Cooper v. Casey, 97 F.3d 914, 917 (7th Cir. 1996).

Defendant Weatherford argues that she could not have been deliberately indifferent because other evidence suggests that Plaintiff was able to walk, stand, and speak clearly during the time that she checked his TB results.  Even so, she cannot dispute Plaintiff's testimony that he told her he was suffering from dry mouth, excessive thirst and urination, and a feeling that he was going to die because she does not recall the specific interaction. The symptoms Plaintiff described, as Defendant Lercher Hopp testified, would not have been readily observable to a medical professional fielding these complaints.  Lercher Hopp Dep. 44:23-45:4 ("I am not going to know that they are urinating and that they

are drinking multiple bottles of water and eating…and that they are tired. So I am only going to notice what is visible to the human eye.").

If, after listening to Plaintiff's complaints, Defendant Weatherford responded in the way Plaintiff alleges not because she felt Plaintiff did not need help, but because she was busy and she believed her administrative duty assignment took precedence over an emergency, a reasonable juror could infer deliberate indifference. See Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011) ("A jury can infer deliberate indifference on the basis of a physician's treatment decision when the decision is so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.").

Moreover, the presence of other prison officials to whom Plaintiff could have complained, but did not, allows for both an inference that Plaintiff was not in as much pain as he alleges, or that Defendant Weatherford was deliberately indifferent, or both. If help was readily available from other officials, Defendant Weatherford could have referred Plaintiff to these individuals, but she did not do so. See Mathison v. Moats, 812 F.3d 594, 598 (7th

Cir. 2016) (deliberate indifference could be inferred from the failure to call 911 when the prison official believed that the inmate was having a heart attack).

Defendant Lercher Hopp, on the other hand, did not have any personal interaction with Plaintiff. Plaintiff's claims against her are premised around her response, or lack thereof, to Plaintiff's written requests for medical treatment. The Court must conclude at this stage in the proceedings that Defendant Lercher Hopp received Plaintiff's December 8, 2011 letter the day after it was sent.

Defendant Lercher Hopp argues that Plaintiff's letters are not sufficient to show that she had personal knowledge of Plaintiff's plight. An inmate, however, may establish a basis for personal liability based upon written correspondence where the correspondence to a prison administrator provides sufficient information regarding a constitutional violation. See, e.g., Perez v. Fenoglio, 792 F.3d 768 (7th Cir. 2015). Though arguably no constitutional violation had yet occurred at the time of Plaintiff's first letter, the letter informed Defendant Lercher Hopp of Plaintiff's serious medical condition, and the record suggests Plaintiff suffered

for approximately four (4) days thereafter before receiving medical treatment.

If, as Plaintiff asserts, Defendants Weatherford and Lercher Hopp ignored his requests for medical treatment and their refusals unnecessarily prolonged Plaintiff's pain, a reasonable juror could find in Plaintiff's favor.  Therefore, Defendants' respective motions for summary judgment as they relate to Defendants Weatherford and Lercher Hopp are denied.

## The Remaining Defendants

In his response to the Defendants' motions for summary judgment, Plaintiff stated that he was no longer seeking relief against Defendants Obaisi, Dawson, Roberson, and Reynolds.  (Doc. 117 at 12).  Plaintiff does not dispute the asserted facts that Defendants Dawson, Roberson, and Reynolds did not have personal involvement in Plaintiff's medical care, and, instead, relied upon the decisions of Logan's medical staff.

Furthermore, no reasonable inference exists that Defendant Obaisi was aware of Plaintiff's medical condition prior to the examination on December 13, 2011 where Defendant Obaisi

diagnosed Plaintiff with diabetes mellitus type 1 and ordered appropriate medical treatment.

Therefore, the Defendants' motions for summary judgment as they relate to Defendants' Obaisi, Dawson, Roberson, and Reynolds are granted.

## Qualified Immunity

Defendants Weatherford and Lercher Hopp assert the defense of qualified immunity. "[G]overnment officials performing discretionary functions are immune from suit if their conduct could reasonably have been thought consistent with the rights they are alleged to have violated." Borello v. Allison, 446 F.3d 742, 746 (7th Cir. 2006) (citations omitted). To determine if qualified immunity applies, the court conducts a two-prong analysis: (1) whether "the disputed conduct, as alleged, violates a constitutional right;" and, (2) "whether that right was 'clearly established' at the time of the alleged conduct." Id. (citing Wernsing v. Thompson, 423 F.3d 732, 742 (7th Cir. 2005)). Disputed facts are viewed in the light most favorable to the plaintiff. Id.

Viewed in the light most favorable to the Plaintiff, Plaintiff's access to medical treatment was delayed after medical staff at

Logan learned about his serious medical condition. At the time of these alleged events, a prisoner's right to adequate medical treatment had been clearly established, as had the prison official's duty to provide such treatment. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Therefore, the Court finds that the Defendants are not entitled to qualified immunity.

**IT IS THEREFORE ORDERED:**

1) **The Defendants' Motion for Summary Judgment [112][114] are GRANTED in part, and DENIED in part. Defendants' Motions are DENIED as it relates to the claims against Defendants Weatherford and Lercher Hopp, and GRANTED as to all other claims and Defendants. Clerk is directed to dismiss Defendants Obaisi, Dawson, Roberson and Reynolds with prejudice.**

2) **A final pretrial conference is scheduled for    March 10, 2017 at 10 a.m.   . The Plaintiff shall appear by video conference and the attorney(s) shall appear in person before the court sitting in Springfield, Illinois. The clerk is to issue a writ for the Plaintiff's participation in the video conference.**

3) **The Court will send out proposed jury instructions and intends to ask the standard voir dire questions published on the Court's website (ilcd.uscourts.gov/local rules and orders/orders and rules by Judge/Judge Myerscough/General Voir Dire Procedure). By   February 24, 2017  , the parties shall file: 1) an agreed proposed pretrial order; 2) alternate or additional jury instructions (no duplicates); 3) motions in limine; and, (4) additional voir dire questions (not duplicative of the Court's). All proposed instructions**

shall be clearly marked, identifying the party, the number, and whether the instruction is additional or alternate (i.e., Pl.'s 1, additional; Pl.'s 2, alternate to Court's 3).

4) The Plaintiff and Defendants shall appear in person at trial. Inmates incarcerated within the Illinois Department of Corrections (IDOC) who are not parties to this case shall appear by video conference and IDOC employees who are not parties may also appear by video conference at trial. Other nonparty witnesses may appear by video at the court's discretion. Therefore, the proposed pretrial order must include: (1) the name, inmate number and place of incarceration for each inmate to be called as a witness; (2) the name and place of employment for each IDOC employee to be called as a witness; and, (3) the names and addresses of any witnesses who are not residents or employees for whom a party seeks a trial subpoena. The party seeking the subpoena must provide the necessary witness and mileage fees pursuant to Federal Rule of Civil Procedure 45.

5) A jury trial is scheduled for   March 28-30, 2017   at 9:00 a.m. at the U.S. Courthouse in Springfield, Illinois. No writs to issue at this time.

6) Clerk is directed to correct the docket to reflect Defendant Lisa Lercher's full name as "Lisa Lercher Hopp."

ENTERED:     September 20, 2016.

FOR THE COURT:

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE